# FORD, Appellant, v. KANSAS CITY.

### Division Two, March 23, 1904.

1. **NEGLIGENCE: Evidence: Permanent Injury: Other Causes.**
Plaintiff alleged and testified that his injuries were permanent,
and resulted in constant pain and soreness in the shoulder and
arm, and stiffness and hardness of their muscles, and that the
conditions were worse in cloudy weather. *Held*, that it was
proper to permit defendant to show that four or five months
prior to the accident plaintiff had been treated for gonorrheal
rheumatism, and for morphine and alcoholic poisoning brought
on by the use of morphine and intoxicating liquors to allay the
rheumatism.

2. ———: ———: ———: **Specific Acts of Drunkenness.** In such
case evidence of specific acts of intoxication is admissible, not
for the purpose of showing the standing or credibility of the
witness, but as tending to show that the permanent disabili-
ties complained of are not the result of the injuries received
in the accident.

3. ———: **Sidewalks: Governmental Duty.** The keeping of a side-
walk in a reasonably safe condition for travel is not a police
regulation, but a governmental duty resting upon the municipal
corporation. That burden can not by the city be shifted to or
imposed upon any person or property-holder without his con-
sent.

4. ———: ———: ———: **Tenant: Ordinance and Charter: Void.**
In an action by a tenant against a city for injuries due to a
defective sidewalk along property which he was occupying, it
is no defense to the action that the city charter and ordinances
required "owners or occupants" of real property to make re-
pairs of sidewalks, and that plaintiff had not complied there-
with. Such provision in the charter or ordinance is unconsti-
tutional and void.

5. ———: ———: ———: ———: ———: **Contributory Negli-
gence: Evidence.** Nor is such ordinance competent evidence to
show that the tenant was guilty of contributory negligence be-
cause of his failure to keep the sidewalk in repair. The burden
of keeping the sidewalk in repair placed upon the occupant of
the premises by the ordinance and charter, does not include a
duty on his part to be on the lookout for defects in the side-
walk.

6. ———: ———: ———: ———: Discovering Defects. A tenant
   has as much right as any other citizen to demand a strict per-
   formance by the city of its duty to exercise reasonable care and
   watchfulness to discover defects in sidewalks in front of the
   premises occupied by him.

Appeal from Jackson Circuit Court.—*Hon. Jno. W. Henry,* Judge.

REVERSED AND REMANDED.

*L. A. Laughlin* for appellant.

(1) The court erred in admitting evidence of
specific instances of intoxication of plaintiff months
prior to the accident. Brown v. Railroad, 66 Mo. 597;
Owens v. Railroad, 95 Mo. 182. The character and hab-
its of plaintiff were not material to any issue in the
case, and therefore its admission was reversible error.
Vawter v. Hultz, 112 Mo. 633; Gutzwiller v. Lackman,
23 Mo. 168; Rogers v. Troost, 51 Mo. 470; Alkire Gro-
cery Co. v. Tagart, 78 Mo. App. 166; Shoe Co. v. Hilig,
70 Mo. App. 301. Not only was the testimony irrele-
vant and immaterial, but it was incompetent. The tes-
timony related to two or three instances of intoxication.
Character and habits can not be proved by specific acts
or instances. It is well settled in this State and else-
where that the character of a witness may be impeached
by general evidence of reputation, but not by evidence
of particular acts. State v. White, 35 Mo. 500; Haw-
kins v. Globe Ptg. Co., 10 Mo. App. 174; State v. Welsor,
117 Mo. 570; State v. Evans, 158 Mo. 589; Railroad v.
Strond, 67 Ark. 112; Totarella v. Railroad, 53 App. Div.
(N. Y.) 413. (2) The court erred in admitting in evi-
dence section 17, article 3, of the charter of Kansas City,
and section 831, Revised Ordinances. Whatever may be
the obligation of the abutting property owner to the city
when ordered by it to repair or build a sidewalk, and
whatever may be his liability for defective construction

when he undertakes to do it, he is under no duty to the public to keep the sidewalk in front of his premises in repair, and is not liable for failure to do so. Baustian v. Young, 152 Mo. 325; Beck v. Brewing Co., 167 Mo. 195; Reedy v. St. Louis Brew. Assn., 161 Mo. 523; Independence v. Slack, 134 Mo. 66; St. Louis v. Ins. Co., 107 Mo. 92; Norton v. St. Louis, 97 Mo. 537; Blackwell v. Hill, 76 Mo. App. 46.

*R. J. Ingraham* and *L. E. Durham* for respondent.

(1)   Evidence of alchoholism and specific instances of intoxication prior to the accident was competent in this case to show that the permanent injuries complained of were due to dissipation entirely. Elliott v. Kansas City, 74 S. W. 617; Brown v. Railroad, 66 Mo. 588. Plaintiff's objection to such evidence is removed by his own instruction, numbered 4. Stephens v. Railroad, 96 Mo. 215; O'Mellia v. Railroad, 115 Mo. 221; Anderson v. Terminal Co., 161 Mo. 420; State v. Yandle, 166 Mo. 594; Fowles v. Beebe, 59 Mo. 403. (2)   Plaintiff's objection to the introduction of section 831 of the city ordinances was too general to permit him to assert here that said section is in violation of certain provisions of the Constitution. Ash v. City of Independence, 169 Mo. 77; Brown v. Railroad, 74 S. W. 973; State ex rel. v. Smith, 75 S. W. 468; James v. Association, 148 Mo. 18; Russell v. Glasser, 93 Mo. 360; sec. 864, R. S. 1899. (a)   A general objection is insufficient where evidence is admissible for any purpose. Dunkmann v. Railroad, 95 Mo. 242; State ex rel. v. Smith, 75 S. W. 468; State v. Wright, 134 Mo. 418. (b) Said ordinance was admissible as evidence of contributory negligence. Avery v. Syracuse, 29 Hun 539. (c) Said ordinance is a valid exercise of the charter power of Kansas City. Kansas City v. Scarritt, 127 Mo. 642. (3)   The city is bound to exercise only ordinary care in maintaining its sidewalks, that is, the care of an

ordinarily prudent man under similar circumstances. Hence defendant's instructions are correct. Letherow v. Railroad, 98 Mo. 74; Keown v. Railroad, 141 Mo. 86; Stanley v. Depot Co., 114 Mo. 606.

FOX, J.—This is an action for damages for personal injuries received by plaintiff which were caused by a fall on a defective sidewalk in Kansas City.

At the time of the accident plaintiff was living with his family in a dwelling house at the southeast-corner of Sixteenth and Holmes streets. The owner of the property was one J. B. Morrison, and plaintiff rented the premises from him and sublet rooms in the house to other parties. The house faced west on Holmes street and the depth of the lot was along Sixteenth street. There was a plank sidewalk on the south side of Sixteenth street, alongside of the premises, which had been put down some years before.

About 11 o'clock in the morning of February 7, 1899, plaintiff left his home with his son, a young man about seventeen years old, to look at some work. They were accompanied to the door by Mrs. Ford and her sister, Cora Bond. Plaintiff and his son went out the front gate, turned north to the corner, and thence went east on Sixteenth street over the sidewalk referred to. When about opposite the middle of the house the son, who was walking next to the fence, stepped on a loose plank, which flew up at the outer end and caught plaintiff's feet and tripped plaintiff so that he fell. In falling plaintiff struck his left arm on the curb stone, fracturing it and wrenching his hips. Plaintiff was assisted to arise by his wife and son and Miss Bond and went back into the house, where he remained for about six weeks. The evidence for the plaintiff showed that the plank which caused plaintiff to trip had been loose for two or three weeks and that the outside stringers had rotted away, causing the board to tilt on the middle stringer.

Plaintiff is a painter and paper hanger and at the time of the trial in November, 1898, had been able to do but little work. The trial resulted in a verdict and judgment for the defendant, from which plaintiff has appealed to this court.

Plaintiff, in his petition, alleges that he sustained permanent injuries. He testified at the trial that his left shoulder was paining him at the time; that his arm seemed sore all the time; that in taking a little cold, or just before rain comes on, or in cloudy weather, it pained him terribly; and that he could not use his arm to reach up or down on account of stiffness and soreness. Also, that he had incontinence of the urine, and that all of said injuries were caused by the fall on a defective sidewalk.

The defendant, in its answer, denied the allegations of plaintiff's petition, and introduced evidence at the trial, tending to prove that the permanent injuries complained of were not the result of any fall which plaintiff may have had, but due to gonorrheal rheumatism and the use of intoxicating liquors. Defendant introduced the evidence of plaintiff's physician, Dr. Higdon, who testified that he had treated plaintiff in August, 1898, five months prior to the accident, for gonorrheal rheumatism. The doctor testified further that when he was called in at that time he found plaintiff suffering from morphine poisoning brought about by medicine that plaintiff had taken to allay the pains of rheumatism; that he found plaintiff had gonorrhea of long standing; and that he attributed his rheumatic trouble to gonorrheal rheumatism.

Defendant also introduced the evidence of Dr. Mount, another one of plaintiff's physicians, who testified that in the year 1898, he treated plaintiff for alcoholism, that is a nervous condition brought on by excessive use of intoxicating liquor. And to further prove that plaintiff was addicted to the use of intoxicating liquor, defendant introduced the evidence of spe-

cific instances of intoxication complained of by plaintiff.

Defendant further showed by Dr. Higdon that the probable effect of gonorrheal rheumatism upon a person addicted to the use of liquor would be to cause a stiffness of the muscles which would cause pain upon movement.

The evidence of specific instances of intoxication was introduced for the avowed purpose of showing that the effects of liquor on the system of plaintiff had produced the permanent injury which he claimed was brought about by the fall upon the sidewalk. No pretention was made at the trial that such evidence was to be considered as proof of plaintiff's negligence, and the court, at the request of plaintiff, instructed the jury at the close of the evidence that the intoxication of plaintiff prior to the accident constituted no defense to the action and that they should disregard such testimony, unless they found that such intoxication caused "wholly or in part" the physical condition of plaintiff since the injury. The court also gave an instruction at the instance of the defendant (No. 9) which confined the evidence to the same purpose.

Defendant also pleaded as a defense to this case that the plaintiff was guilty of such contributory negligence as to bar a recovery. It developed in the evidence that the plaintiff fell on the walk in front of the premises where he was living at the time. Defendant introduced in evidence section 831 of the Revised Ordinances of Kansas City, which requires the owner or occupant of real property to keep the sidewalk in front of the property in repair. The express purpose for which the ordinance was introduced, as given by the counsel for defendant at the trial, was to show that the plaintiff knew, or ought to have known of the condition of the sidewalk complained of, and consequently the ordinance was evidence tending to show contributory negligence.

OPINION.

Upon this appeal, there are three propositions pre-sented to this court for review:

First. It is contended that the court committed error in the admission of specific instances of intoxication of the plaintiff.

Second. That the court erred in the admission of the ordinance which provides that the owners or occupants of real property shall keep the sidewalk, curbing and guttering in front of the property in good repair and order.

Third. That instructions numbered 4 and 9, given for defendant, are erroneous.

It will be observed that plaintiff contends that his injuries occasioned by the failure of the defendant to properly keep in repair its sidewalks, were of a permanent nature. In estimating the damages to which plaintiff was entitled by reason of the injury, it is of vital importance to ascertain the nature and character of the injury, whether permanant or merely temporary.

This issue was presented and was one of the disputed questions to be submitted to the jury. Defendant was clearly entitled to introduce any testimony which tended to show that the permanent disabilities complained of were not the result of the injuries received, but resulted from an entirely different cause. The record discloses that certain physicians testified that plaintiff was suffering from gonorrheal rheumatism, and that persons suffering from this malady, who used intoxicating liquor to excess, would feel a stiffness in their muscles, which would cause pain upon movement. Plaintiff testified, and complained of stiffness in the muscles and pain from movements of the body, and he attributed such condition to the result of the injuries received by the fall. If the excessive use of intoxicating liquor, together with the rheumatism, had a ten-

dency to produce the condition complained of by plaintiff since the injury, it was clearly the province of the jury to hear such testimony and consider it, together with all the other testimony, in passing upon the question whether the condition of the plaintiff since the injury was the result of the fall on the sidewalk, or the result of conditions of health, independent of the accident.

Appellant contends that character and habits can not be proved by specific acts or instances. This is true and the cases cited by learned counsel for appellant fully sustain this contention; but is the contention and the rule announced supporting it, applicable to the questions involved in the controversy? There is a marked distinction between a showing of general character or habit which affects only the standing and credibility of a witness, and the admission of testimony which affects the condition of health of an individual. If this testimony was introduced and admitted for the purpose of showing that plaintiff was a common drunkard and thereby his standing and credit as a witness should be lessened, it was clearly inadmissible; but, on the other hand, if the specific instances of the use of intoxicating liquors had a tendency to affect his condition of health, as testified to by the physicians, then it was admissible. Two or three specific instances of intoxication may fall far short of establishing habit or character. Still, they may be very important in connection with rheumatism, as tending to account for the complaints of plaintiff since the injury. The court very properly confined the purpose of the testimony, by its instructions to the jury, and there was no error in the admission of this testimony.

The second proposition involves the question of the admissibility of section 17 of article 3 of the charter of Kansas City, and section 831 of the Revised Ordinances of that city. The charter provision is as follows:

"Owners or occupants of real property may be required to make, according to rules and regulations prescribed by ordinance, repairs of sidewalks, alleys, curbing and guttering, or either in front of their property, and on the adjoining side of the street or avenue; in such repairs may be included the keeping in good order and proper place of any such improvements, and also cleaning and removing therefrom ice, snow, earth or other substances. Such rules and regulations shall be deemed police regulations, and violations thereof may be punished accordingly by fine or imprisonment or both."

The ordinance introduced in evidence, and which was predicated upon the charter provision herein quoted, was as follows:

"It shall be the duty of all persons, owning or occupying any real property, fronting upon any street, to keep the sidewalk, curbing and guttering in front and along side of such property and on the same side of the street, in good repair and order, and to clean the same, and remove from any such sidewalk, curbing and guttering all ice, snow, earth, or other substance that in any wise obstructs or renders the same dangerous, inconvenient or annoying to any person."

It will be observed that the plaintiff in this cause was not the owner of the property in front of which is located the sidewalk, upon which, it is claimed, he received his injuries; but was a mere tenant, with absolutely no interest in the property.

It is earnestly contended by respondent that this ordinance must be applied to an occupant of the property, with the same force as it does to the owner; in other words, so far as the enforcement of the ordinance is concerned, the renter and owner of the property are the same. We will say, at the outset, that we must decline to give our sanction to this contention. We take it, there is a marked distinction in the application of

Vol 181 mo—10

this ordinance to the owner and a mere occupant of the property.

The fundamental ground upon which the ordinance is predicated, is that a sidewalk kept in good repair enhances the value of the property upon which it fronts. The keeping of sidewalks in reasonably safe repair for travel is not a police regulation; it is a governmental duty, resting upon the municipal corporation.

This court very clearly announced the doctrine in Jackson v. Railroad, 157 Mo. 1. c. 637. BURGESS, J., speaking for the court, said:

"With respect to streets and sidewalks in cities the duty rests upon the municipalities in which they are located to keep them in reasonably safe repair for travel, and for failure to do so, and injury sustained by reason of such failure, they are responsible in damages, but no such burden can be shifted to or imposed upon any person or property-holder without his consent, because in no sense a police regulation, while the regulation of the speed of trains within the corporate limits of cities is a police regulation."

It is contended by respondent that this ordinance was admissible for the purpose of showing contributory negligence on the part of plaintiff. This contention was doubtless based upon the theory that this ordinance, placing the burden of keeping the sidewalk in safe repair upon the occupant of the property, also made it his duty to be on the lookout for any defects in such walk. We can not agree to such contention. It is the duty of the city to keep in safe repair its sidewalks for public travel, and it is equally its duty to exercise reasonable care and prudence and watchfulness in the discovery of any defects in its walks. The renter has as much right to demand this strict performance of duty of the city, in respect to sidewalks in front of the premises occupied by him, as any other citizen. There is a distinction, even, to be observed in the power sought to be exercised by a city in the removal of ice and snow

by the owners of premises from the sidewalks fronting them, and the making of repairs of such walk.   Upon this proposition, the authorities are in conflict.   BRACE, J., in City of St. Louis v. Insurance Co., 107 Mo. l. c. 96, said:

"While there is respectable authority for the position that a municipal corporation can not impose upon the citizen the obligation to keep the public sidewalk in front of his premises free from obstruction by snow etc., at his own expense (Gridley v. City of Bloomington, 88 Ill. 554; Chicago v. O'Brien, 111 Ill. 532), the weight of authority is, however, the other way, and in favor of the position tentatively stated in the foregoing *dicta,* as to such power."

In the course of the opinion in the same case, the doctrine announced by Shearman & Redfield on Negligence is approved, and it will be observed the distinction between removing snow and ice from the sidewalks by the owners of the property, and the maintaining of the streets and sidewalks in front of such premises, is clearly indicated.   It was said in that case:

"The doctrine on this subject is tersely stated in 2 Shearman & Redfield on Negligence, section 343, as follows:  'An abutting owner, as such, owes no duty to maintain the street or sidewalk in front of his premises, and is not responsible for any defects therein which are not caused by his own wrongful act.   He may, consequently, like any other person using the sidewalk in front of his premises, recover for an injury from a defect therein against the city whose duty it was to keep it in repair.   The fact that he violates a city ordinance, which requires abutting  owners to remove snow and ice from the sidewalk in front of their premises within a certain time after their accumulation, does not render him liable to one injured by falling upon such snow and ice, nor to the city which had suffered judgment for the same injury.'   In support see:  Kirby v. Market Assn., 14 Gray 249; Vandyke v. Cincinnati, 1 Disney 532;

Heeney v. Sprague, 11 R. I. 456; Flynn v. Canton Co., 40 Md. 312; Moore v. Gadsden, 93 N. Y. 12; City of Hartford v. Talcott, 48 Conn. 525; City of Keokuk v. District of Keokuk, 53 Iowa 352; 2 Black on Judgments, sec. 575; 2 Dillon on Mun. Corp. (4 Ed.), secs. 1012, 1035. We have found no case in conflict with the doctrine thus stated.''

It may be conceded that the municipal corporation may impose upon lot owners the burden of the duty of keeping the walks in front of their premises in reasonably safe repair, and enforce the same by special tax-bills, or penalties for failing to perform such duty; but we are unwilling to extend this power to a mere occupant of property to keep in repair the walks in front of the property occupied by him. This duty could only be enforced against a tenant by a judgment in the nature of a fine for failing to perform his duty; no tax-bill could be issued against him, because he is not the owner of the property. The city has absolute control of its streets and sidewalks and, under the law, it must keep them in a reasonably safe condition, and this duty can not be evaded, suspended, or shifted upon others, by any act of its own. [Welsh v. St. Louis, 73 Mo. 71; Russell v. Town of Columbia, 74 Mo. 480.]

The keeping of sidewalks in safe repair, in a large and populous city, means, in many instances, the doing of a large amount of substantial work, and if cities can impose this burden and duty upon mere renters of property, we confess those living in such cities, who are so unfortunate as not to be able to own the property occupied by them, are at the mercy of charter framers.

It is unnecessary to express an opinion as to that part of the ordinance relating to the removal of snow and ice from the walks by the occupant, for that feature of the ordinance is not involved in this cause; but upon the question of imposing the duty of keeping the sidewalks in safe repair by the mere occupant, who is not the owner, we unhesitatingly say that the charter pro-

vision and ordinance predicated upon it, which author-
izes the exercise of such power, is unconstitutional and
void.   We have searched in vain for authority which
sanctions the exercise of any such power.   We readily,
comprehend the reason for imposing the duty of street
improvements and repair upon the property owners, for
such burdens of taxation are repaid in the enhancement
of the value of the property, but no such reason can be
assigned as to the tenants occupying the property.

It will be noted that Judge DILLON, in his recog-
nized work on Municipal Corporations, in treating of
this subject, is content with confining the duty of repair-
ing the sidewalks to the lot owners (Dillon's Munic-
ipal Corporations [4 Ed.], sec. 1012), and no case to
which our attention has been directed, extends the ex-
ercise of this power any further than to impose the duty
of keeping the walk in repair, upon the owner of the
property.

The city, in respect to the sidewalk in front of the
premises occupied by plaintiff, owed him the same duty
to keep it in reasonably safe repair, as it did to any other
citizen.   The ordinance was immaterial and incompe-
tent for any purpose, and it was calculated to mislead
the jury and it was prejudicial error to admit it.

Instructions numbered 4 and 9 were given at the
request of defendant, and are complained of and urged
as error in the disposition of the cause.   Instruction
numbered 4 is as follows:

"The court instructs the jury that the defendant
city was only bound to use the care and prudence of an
ordinarily prudent man in the inspection, maintenance
and repair of its sidewalks at the place where plaintiff
claims to have been injured; and if you find and be-
lieve from the evidence that the board on which the
plaintiff claims to have fallen was made loose prior to
the date of plaintiff's injury, by some third party, then
your verdict will be for the defendant, unless you find
that the defendant city knew of said defect in time to

have repaired the same by ordinary care, or that such defect had existed for such a length of time that defendant would have known of its condition in time to have repaired it by the exercise of ordinary care upon its part."

This instruction announces, substantially, the same principle as instruction numbered 1, requested by and given for plaintiff, the only difference being that in instruction numbered 1, the term, "ordinary care" is used, and the one given for defendant practically defines the meaning of ordinary care. It says "care and prudence of an ordinarily prudent man in the inspection, maintenance and repair of its sidewalks." This instruction was substantially correct, and in harmony with declarations upon that subject approved by this court.

Instruction numbered 9, at least so much of it as is assailed, was as follows:

"The court instructs the jury that if you find and believe from the evidence that all or any part of the injuries or condition from which plaintiff claims to suffer and to have suffered by reason of said fall, are due to previous disease or dissipation, then you will award to the plaintiff no damages for such condition or injuries as are entirely attributable to previous disease or dissipation."

It will be observed that this instruction simply tells the jury that plaintiff is not entitled to recover damages for injuries or conditions from which plaintiff claims to suffer which are entirely attributed to previous disease or dissipation. If there is any substantial testimony upon which to predicate this instruction, we see no objection to its form. Certainly injuries or complaints which are entirely attributable to a cause different to the one alleged in the petition, should not be made the basis for plaintiff's recovery in this cause.

We have given expression to our views upon the

propositions presented by the record before us in the cause.

For the error as herein indicated, the judgment should be reversed and the cause remanded.

It is so ordered.   All concur.