ELMAR STEWART, APPELLANT, v. HUBERT O. SHEIDLEY ET AL. AND KANSAS CITY, MISSOURI, RESPONDENTS.*

Kansas City Court of Appeals.   March 4, 1929.

---

*Corpus Juris-Cyc References: Courts, 15CJ, section 315, p. 925, n. 46; Municipal Corporations, 43CJ, section 1867, p. 1104, n. 28; section 1872, p. 1110, n. 10; section 1994, p. 1225, n. 82; section 1995, p. 1225, n. 87; section 2044, p. 1279, n. 84; section 2053, p. 1297, n. 66; p. 1299, n. 73; Trial, 38Cyc, p. 1543, n. 67.

*Ingraham D. Hook* for appellant.

*Mosman, Rogers & Buzard* for defendant, Sheidley.

*John T. Barker, Milton J. Oldham* and *Arthur R. Wolfe* for City.

LEE, C.—This is an action for damages for personal injuries sustained by the appellant Elmer Stewart from a fall caused by a defect in the sidewalk on the south side of 9th Street between Main and Walnut Streets, in Kansas City, Missouri, adjoining defendant Sheidley's office building. The petition alleges the negligence of the defendants in permitting the defective sidewalk. The alleged liabil-

ity of defendant Sheidley is because of his co-ownership of the building. Other co-owners were named in the petition, but were not served with summons, and are not in the case. Kansas City filed a general denial and a plea of contributory negligence. Defendant Sheidley filed a general denial. At the close of plaintiff's case both defendants asked peremptory instructions in the nature of a demurrer to plaintiff's evidence, which the court sustained; whereupon plaintiff took an involuntary nonsuit, with leave to move to set the same aside. Later, upon the court's refusal to set aside the involuntary nonsuit, plaintiff appealed to this court.

Plaintiff, fifty-seven years of age, a mail carrier in Kansas City since 1890, left the post office, at 9th Street and Grand Avenue, on his regular delivery, about 7:30 A. M. on December 2, 1924, and was walking down the south side of 9th Street toward the beginning of his regular route on Wyandotte Street. The testimony shows that the established grade of this street, from Walnut to Main, is about thirteen and twenty-five hundredths per cent down grade. From the alley in the middle of the block down to Main Street the walk extends alongside of the Sheidley building. For about two feet outward from the side of the building the sidewalk space is covered in part by iron gratings, and in part is open to furnish light to the basement of the building. These open spaces, of the same width from the building as the iron gratings, are protected by iron railings set in iron posts. From the line of these railings and iron gratings outward to the curb the sidewalk is composed of stone slabs approximately ten feet north and south by four feet east and west, and about five inches thick. Because of said railings all pedestrian traffic is on the stone walk and not on the iron gratings. These stone slabs have constituted the sidewalk there for many years, in the course of which they have become much worn, particularly toward the center of the walk. The testimony shows that the space underneath the sidewalk is used in connection with the Sheidley building as a boiler room and for coal bins. The stone slabs which compose the sidewalk rest upon steel I-beams, which are connected with the foundation of the building and with the wall under the curb line.

Plaintiff testified that he was carrying his mail sack, weighing about forty-five pounds, in front of him, with the strap over his left shoulder, with his left arm around the sack, and the right arm holding it to help carry the load, about the middle of the sack, a little lower than his left arm. He testified that when about eighty feet from the bottom of the hill he tripped and fell face forward down hill, striking his left knee on one of the iron posts referred to, wrenching his shoulder, back and neck, and badly bruising his nose. Upon examining the sidewalk to see what had tripped him he found that one of the slabs was cracked diagonally, so that a triangular piece

in the southwest· corner thereof, about twelve inches wide, along the south edge, and eighteen inches wide along the west edge, with the crack as the hypotenuse, had become separated from the rest of the slab. The testimony showed that this triangular piece stood about seven-sixteenths of an inch higher than the main slab from which it had become separated, and that this main slab was so badly worn toward the center, as above mentioned, that there was an actual difference in the level between the lowest part of the depression and the top of the triangular piece of some two or three inches.

Plaintiff testified that he had been on this particular mail route about four years, and in his five daily deliveries usually passed up and down this street ten times a day, excepting in bad weather. He testified that he knew the walk on the whole hillside was in bad condition, with numbers of cracks and depressions, and that he had seen this particular crack many times along with the others, but denied that he had ever specially identified it as distinct from the others. He testified that on the morning in question, as he was walking with his mail sack in front of him, he could see the ground about twenty feet ahead, that he saw the general condition of the sidewalk, as he walked down there, and that he saw this crack along with the others; that he walked on what he thought was the safest part of the walk.

The evidence further shows that after he fell he continued his delivery, which was on a down-town route, and then returned to the post office, where he reported the accident and then went home. A doctor was called, and later his leg was put in a plaster cast for several weeks. He returned to work on part time about·April 1st, and on full time about May 1, 1925.

The peremptory instruction in the nature of a demurrer which the trial court gave for defendant Kansas City was as follows:

"You are instructed at the close of plaintiff's case that, under the pleadings and the evidence, your verdict must be for defendant Kansas City."

The demurrer for the defendant Sheidley was in similar language.

These demurrers, which the court sustained, do not indicate whether they are based on the contention that the evidence on behalf of plaintiff failed to show facts sufficient to constitute a cause of action in themselves, or whether it was that plaintiff's evidence showed that he was guilty of such contributory negligence as would bar a recovery.

The rule is that on a demurrer to the evidence all the testimony must be considered most favorably to the plaintiff. [Rose v. St. Louis-San Francisco Railway Co., 315 Mo. 1181, 289 S. W. 913; West v. St. Louis-San Francisco Railway Co. (Mo.), 289 S. W. 965; Jones v. Gillioz (Mo. App.), 9 S. W. (2d) 89.]

As to defendant Kansas City the evidence shows negligence. The defect in the sidewalk was shown to have existed for a long time. The crack in the slab, which permitted an unevenness of not less than seven-sixteenths of an inch, was shown to have been an old one; and the dangerous condition to which this unevenness gave rise was accentuated by the depressions in the stone slabs at that point, arising from many years of wear. The steep grade in the sidewalk at that point added to the natural hazard of traffic, and it could not be said as a matter of law that the maintenance of this condition for an unreasonable length of time did not constitute such negligence on the part of the city as would make it liable for any injuries of which it was the proximate cause, in the absence of contributory negligence on the part of the plaintiff.

The only defense which Kansas City offers in this court to its alleged negligence in this case is that the defects were too trivial to be actionable. It cites the case of Baker v. City of Detroit, 132 N. W. 462, holding that an inequality of two inches and less in a sidewalk does not render it not reasonably safe for public travel; and the case of Gastel v. City of New York, 86 N. E. 833, holding that a sidewalk in which the difference in level for its entire width was about one inch, and upon which there was no edge upon which the foot might catch, did not establish the city's negligence. These cases, from other States, would not be controlling in this State, as a matter of law, even under the same state of facts. However, they do not in any event apply to the facts in this case, in which the defect existed on a steep hillside, with a distinct protuberant edge of seven-sixteenths of an inch surmounting a further irregular depression in the walk. Whether this was negligence on the part of the city was properly a question for the jury.

The question then arises whether the evidence on behalf of plaintiff, to which the demurrer was filed, showed such contributory negligence on the part of plaintiff as would bar recovery as a matter of law. The act of plaintiff which defendants allege as such contributory negligence consisted in his walking down the hillside in question when he knew that the sidewalk was defective, having traveled on same several times a day for four years and having seen this particular crack in the walk along with the others. Mere knowledge on the part of plaintiff that the sidewalk was defective would not make his use thereof negligence as a matter of law, unless he knew or ought to have known that it was dangerous. This distinction has been repeatedly recognized by the courts. In Devlin v. City of St. Louis, 252 Mo. 203, 158 S. W. 346, the court said:

"There was ample evidence that the sidewalk in question was permitted to exist in an unreasonably defective condition at the place of the accident, and this had continued for so long that the defendant

was chargeable with notice thereof. But there was no evidence proving that it was so imminently dangerous that no person of ordinary care and prudence would use it as a pathway. Hence we overrule the assignment of error as to the submission of the case to the jury."

To the same effect see Heberling v. City of Warrensburg, 204 Mo. 604, 103 S. W. 36, in which the court said:

"If he knows of a defect and it is not so obviously dangerous that no prudent person would attempt to use the street, he may still use the street providing he exercises that care which a reasonably prudent person would in like circumstances, but he is not bound merely because he encounters a defect which a reasonably prudent man would think he could pass by the exercise of care, to avoid the street entirely."

This case was cited with approval in Lueking v. City of Sedalia (Mo. App.), 167 S. W. 1152. In this case plaintiff was injured in crossing a street on worn and defective stepping stones, from which she slipped and fell. The court said:

"If it be true the plaintiff chose the less safe way, still she cannot be held guilty in law of negligence, unless the way selected was so obviously dangerous that a prudent person would have refused to encounter its dangers. The fact that she knew the crossing in its defective state was more dangerous than it would have been if maintained in reasonable repair did not preclude her from using it if a reasonably prudent person in her situation would have thought the increased dangers could and would be avoided by the exercise of greater care than ordinarily would be required."

In Hinton v. City of St. Joseph (Mo. App.), 282 S. W. 1056, plaintiff was injured by falling on the sidewalk. The lid of a sewer inlet at the edge of a sidewalk on the corner had been tipped out of place. As she moved to the outer side of the walk to pass other pedestrians she tripped and fell. She stated that she was not looking "right straight down, or I could have seen it," that she was "not paying any special attention" to the sidewalk, that she could have seen the lid as she crossed the street without looking down "if I had been watching for it or anything like that." This court held that she could not be convicted of contributory negligence as a matter of law.

The case of Megson v. City of St. Louis (Mo.), 264 S. W. 15, was similar to the present case. There the plaintiff was injured by falling through a defective covering, composed of glass cemented into an iron frame, comprising part of the sidewalk in front of a business building on 6th Street in St. Louis. He had traveled over the street many times, and in passing had noticed that the covering was in an old, worn, corroded and loose condition and had been so for as much as a year theretofore; that as an engineer he noticed such things. On

560

this occasion he had stepped into the building, and as he stepped out and upon this grating it broke through and precipitated him into the area underneath; that "I paid no attention to it at that time. I had something else on my mind and stepped in there and I asked him a question and came out . . . No, no; I naturally thought it was safe . . . I had no warning at all at that time, I stepped and went down." The court said:

"This court has repeatedly held that knowledge of defects in a highway, without knowledge of the dangers incident to those defects as would prevent a person of ordinary prudence, in the exercise of ordinary care for his own safety, from using the highway, does not convict the traveler of contributory negligence as a matter of law. . . . A traveler on a highway may not properly be convicted of contributory negligence as 'matter of law' in using a highway with knowledge of its defects 'unless the facts in evidence exclude any other fair and reasonable inference on the subject,' and unless the defects known to him at the time were 'of such nature as to render his use of the highway necessarily dangerous to a person ordinarily careful' or 'that an ordinarily prudent person . . . would not have attempted to pass over it.' "

See, also, Maus v. Springfield, 101 Mo. 613, 14 S. W. 630, 20 Am. St. Rep. 634, in which the court said:

"Plaintiff admits he was aware of the gap or opening in the crossing but the alleged defect in it was not of such nature as to render its use necessarily dangerous to a person ordinarily careful. His knowledge of it was entitled to consideration as bearing on the issue of his negligence, but it was not decisive of that issue nor did it of itself preclude a recovery."

In the present case we do not find evidence indicating contributory negligence by plaintiff as a matter of law. The street and sidewalk were in the heart of the city, and were common use by the general public. They constituted the most direct highway from the post office to his regular mail-delivery route. We cannot say that knowledge of a mere defect in a city street not necessarily dangerous to one using proper care makes that street pariah, thenceforward to be shunned at whatever cost.

On cross-examination he testified as follows:

"Q. Your mind is all right? A. My mind is all right as far as I know.

"Q. And if you see a place like that in the walk you can tell whether it is dangerous or not, can't you? A. I could; yes, sir.

"Q. And this wasn't.. You had seen it and you didn't see that it was dangerous? A. From the distance I saw it; I had not considered it extremely dangerous.

"Q. You went over it ten times a day. You had seen it there for four years and you never thought it was dangerous? A. The condition in the city required—

"Q. (Interrupting) Never mind the law now.

"Mr. Hook: Let the witness answer.

"Q. (Mr. Oldham) You was walking this day where you always walked, weren't you? A. Yes, sir.

"Q. And never fell down in the four years before? A. No, sir.

"Q. And you didn't think it was dangerous, didn't pay any attention to that thing? A. No, sir.

"Q. And you never had. You never thought a man could fall over it, did you? A. I had not paid any attention to it at—

"Q. (Interrupting) Well, why hadn't you? Don't you use your God-given senses when you are walking along on the street? A. I didn't stop at every place on the sidewalk and run through my mind as to whether a man would fall over that or not."

We hold that the question of plaintiff's contributory negligence was one for the jury.

As to appellant Sheidley the general rule has been stated as follows:

"An abutting owner, as such, owes no duty to maintain the street or sidewalk in front of his premises, and is not responsible for any defects therein which are not caused by his own wrongful act . . . The fact that he violates a city ordinance, which requires abutting owners to remove snow and ice from the sidewalk in front of their premises within a certain time after their accumulation, does not render him liable to one injured by falling upon such snow and ice, nor to the city which had suffered judgment for the same injury." [Ford v. Kansas City, 181 Mo. 137, l. c. 147, 79 S. W. 923, 926; citing Stearman & Redfield on Negligence, section 343, and numerous decided cases.]

The foregoing statement was quoted with approval in Breen v. Johnson Bros. Drug Co., 297 Mo. 176, l. c. 185, 248 S. W. 970, in which case defendant had permitted a hole, where glass had broken out, to remain in the sidewalk in front of its property. Into this hole plaintiff's cane went, causing the fall and injury. The court said:

"It is not claimed that defendant, or any of its employees, produced said hole, or in any manner aided in producing the same. On the contrary, plaintiff, in her petition, seeks to recover damages from respondent on the theory that it impliedly was under obligation to keep said walk in repair. Even if there had been an ordinance of the city of St. Louis in existence requiring the defendant to keep said walk in repair, it would not have afforded the plaintiff a right of action against defendant in view of the facts aforesaid."

Plaintiff contends, however, that the case of Bianchetti v. Luce (Mo. App.), 2 S. W. (2d) 129, recently decided by this court, es-

tablishes the liability of the abutting property owner for injuries caused by a defective sidewalk. In that case defendant maintained a "manhole" or "coalhole" about two feet square in the sidewalk, the cover of which was composed of a metal framework, containing numerous glass-covered circular holes about two inches in diameter, for the purpose of giving light. Two or three of these glasses were missing, and plaintiff caught her crutch in the hole and fell. In holding that the lessee in possession of the building was liable, the court, by BLAND, J., said:

"There is no evidence as to who placed the manhole in the sidewalk but it may be inferred that it was placed there either by the owner of the property located at 1026 Main Street or by some other person for a purpose in connection with the use of the premises. . . . The manhole was used by these defendants to afford light for that part of the basement under the sidewalk. There is no evidence that it was used by them for any other purpose. The evidence shows that shortly after plaintiff was injured the personal defendants removed the manhole and replaced it with concrete so as to make the sidewalk of continuous material of this character. . . . In view of the fact that these defendants were in possession and control of the areaway under the sidewalk and used that part of the premises for their purposes in connection with which the manhole was used in furnishing light, we think there is no question but that there was sufficient evidence to go to the jury on the question of their negligence in failing to keep the manhole cover in proper repair."

It is to be noted that the negligence in that case was not based on the fact that defendants used the areaway underneath, but on their negligent maintenance of the manhole in connection with that use. They had changed the normal type and evenness of the sidewalk to a special type, for their own benefit; and it was this special device which was out of order. This special use for their particular benefit, emphasized by their repair of the defect after the accident, indicated a possession and control over the sidewalk which placed a duty on them in excess of that of mere lot-owner. The court in this case, as in the Breen case, recognized the distinction between bare ownership of the building and of the space beneath the walk, on the one hand; and on the other hand, an alteration of the normal condition of the walk by special devices intended for the benefit of such owner in his use of such areaway beneath. In the present case the walk, over its entire surface (except the two-foot strip next the wall, not involved herein), was of uniform material and shape, and was what the city had provided and maintained. The crack was not caused by any special use of the sidewalk by the owner or tenant of the building. So far as the evidence shows a new walk of brick or solid concrete, or any other material, covering the whole space, could

have been installed by the city without changing or interfering with the use being made of the basement.

Plaintiff sought to bring defendant Sheidley within the exception by showing that the crack was caused by reason of the sidewalk slabs being laid on steel I-beams, and that a wedge had been placed between the I-beam and the under side of the corner of the slab which had cracked off. This, he claims, was sufficient to justify the inference that the crack was thereby caused; and that as the sidewalk slabs constituted the ceiling of the area underneath, used as engine and coal-storage room for the building, it came within the rule of the Bianchetti case. There was no evidence as to who placed the wedge in the place indicated, nor why, nor when (save that it was so old that it crumbled when touched), nor that it was of any benefit to defendant to have it so, nor that defendant knew or ought to have known of it.

There was also an allegation that the maintenance of the iron railing was an act of negligence, but this is not sustained by the evidence offered. The testimony shows that the travel space on the walk as commonly used and as used by plaintiff in this case was outside of the line of railings and gratings, which they protected, and that they contributed nothing to his fall. This is borne out by the photographs introduced. So far as the evidence shows to the contrary, this railing may have constituted an actual aid to the comfort and safety of pedestrians on this steep hillside. He alleges that he struck one of the iron posts as he fell. In the absence of the post he might have fallen against the building, or face forward down-hill clear to the ground; and it is just as properly to be inferred that the railing broke his fall and minimized his injury as the contrary.

The petition alleges in general terms that "it was the duty of all the defendants to maintain said sidewalk at said place in a reasonably safe condition for pedestrians, and that defendants negligently permitted and caused said piece of stone in said sidewalk to extend above the surface," but it fails to allege any special facts or circumstances which imposed on defendant Sheidley in this case a duty which the common law did not require of an abutting owner. As to him it merely pleaded a legal conclusion, which is not sufficient. [Zasemowich v. American Mfg. Co. (Mo.), 213 S. W. 799.] Neither does it allege that the railing and post caused or contributed to his fall.

We therefore hold that under the pleadings and the evidence there was no showing of liability on the part of defendant Sheidley.

For the reasons herein stated the action and judgment of the trial court should be affirmed as to the defendant Hubert O. Sheidley, and reversed and the cause remanded as to defendant Kansas City. *Barnett, C.,* concurs.

564

PER CURIAM:—The foregoing opinion by LEE, C., is approved and adopted as the opinion of the court. The action and judgment of the trial court in overruling plaintiff's motion to set aside his involuntary nonsuit is accordingly affirmed as to defendant Hubert O. Sheidley. As to defendant Kansas City the judgment of the trial court is reversed, and the cause remanded for trial. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* not present.