**TED W. GREER CONSTRUCTION COMPANY, INC., Plaintiff-Appellant,**

v.

**Carl LaSALA, et al.,
Defendants-Respondents.**

**No. WD32742.**

Missouri Court of Appeals,
Western District.

Nov. 16, 1982.

Dean A. Hodapp, Blumer & Nally, Kansas City, for plaintiff-appellant.

Howard D. Lay, Griffin, Dysart, Taylor, Penner & Lay, Kansas City, for defendants-respondents.

Before SHANGLER, P.J., and PRITCHARD and DIXON, JJ.

DIXON, Judge.

These cross appeals arise out of a dispute between the owner and contractor in the construction of a house. The jury returned a verdict against Greer Construction, plaintiff below, on its claim and awarded the owners LaSalas $1,500 actual damages and $1,000 punitive damages on their counterclaims for "kickbacks" to Greer from other contractors performing work on the house. The jury found in Greer's favor on the LaSalas' counterclaim for improper construction.

Greer Construction claims error in the admission of certain exhibits. The LaSalas' cross-appeals assert, first, that Greer's notice of appeal was not timely filed, and second, that the jury was given an improper converse instruction on the LaSalas' claim for improper work.

The LaSalas' contention that Greer's notice of appeal was untimely is without merit. Greer filed a motion for new trial on February 5, 1981, which was within the fifteen-day period after entry of judgment allowed for the filing of new trial motions. Rule 78.04. The judgment became final on May 6, that date being ninety days after the motion for new trial was filed, and the judge not having ruled on it. Rule 78.06. Greer then had ten days in which to file his notice of appeal, Rule 81.04, which he did on May 18. Of course, the tenth consecutive day after May 6 was May 16, but since that date in 1981 fell on a Saturday, the period ran until the end of the following Monday, or May 18. Rule 44.01(a).

The LaSalas and Ted Greer entered into a very loose agreement concerning the building of a house for the LaSalas. Greer's principal work had been as a masonry contractor. The relationship between the parties deteriorated during the course of the year the house was under construction, due in large part to a complete lack of understanding between the parties as to what exactly was to be built and how much it would cost, as well as to the lack of a precise definition of the role the contractor and the owner were to play in the construction process. Mr. LaSala secured a loan at his bank and supplied Mr. Greer with blank checks, already signed by Mr. LaSala as drawer, which Mr. Greer was to use to pay expenses as they were incurred on the job. The amount of credit in this account was originally $75,000 and ultimately exceeded $100,000. From time to time Mr. Greer would insert his own name as payee on a check in consideration for services and supplies provided in the construction of the house. Other checks were made payable to other contractors performing various tasks in connection with the construction.

The nature of whatever contractual relationship existed between Greer and the LaSalas is difficult to define in terms of conventional contractual arrangements. In some respects, it was like the relationship of general contractor and owner and in other respects, the arrangement appears to negate any general contractor responsibility on the part of Greer.

When the house was finally completed, Greer filed a lien on an "account" asserting only amounts due for masonry work and "supervision" plus a small amount for painting. This "account" totaled approximately $48,000 and indicated a credit of approximately $22,000. Of the balance of $26,000, approximately $21,500 represented claims for supervision and overhead items such as taxes and insurance. LaSalas also paid other contractors directly. The nub of contention between Greer and the LaSalas on the account was the amount and nature of Greer's work and the LaSalas' payments.

Also in dispute was Greer's claim for supervision and overhead items.

■ Greer claims error in the admission of some of the checks given him by LaSala, which were endorsed on the back by Greer under the following words: "Endorsement below constitutes waiver of all lien rights for all labor and/or materials up to and including date of check." Greer objected to admission of the checks on the grounds that they tended to show waiver of the mechanic's lien and that waiver was not pleaded by the LaSalas as an affirmative defense, and because he claims the question of release is to be determined by the judge and not the jury. What Greer refuses to acknowledge is that the checks were relevant to show that Greer had received payment, at least to the extent of the amount of the checks, for material and services supplied in constructing the house. The checks ranged in amount from over eight thousand dollars to under five hundred. Most do not indicate what the check is payment for, and the testimony of both Greer and LaSala reveals that little or no records were made of labor expended or supplies purchased by Greer on behalf of LaSala. The checks, made out over a seven-month period, evidence a regular pattern of payment to Greer. Greer's pleadings alleged underpayment. The fact of payment was clearly in issue, both as to amount and for what items, and the cases cited by Greer to the effect that irrelevant evidence is inadmissible are inapposite.

■ Of course, what Greer really found objectionable was the recitation of the lien waiver appearing above Greer's endorsement on the back of the checks. While he did direct his concern to the lien waiver, as opposed to the admissibility of the entire check, during the colloquy at the bench over the admissibility of the checks, Greer's counsel did not request any limiting instruction. Greer's claim on his account covered the entire job, and the issue of what the various payments covered was hotly contested. Because part of the exhibits may have been objectionable does not make them inadmissible for any purpose, and it was up to counsel to request a limiting instruction if he believed the waiver would prejudice his client. *Thigpen v. Dodd's Truck Lines, Inc.*, 498 S.W.2d 816 (Mo.App. 1973). An objection going to the whole of an exhibit is properly overruled if any part is admissible. *Breshears v. Union Electric Co.*, 373 S.W.2d 948 (Mo. banc 1964).

■ Greer also complains on appeal about the admission of exhibits 2–CC, 2–QQ, and 2–HH, lien waivers executed by Greer to the bank, which were part of a large bundle of bank records apparently prepared by Greer and offered by him for identification. The exhibits, however, were not filed in this court. Greer's objections to them cannot be considered. *Jones v. Jones,* 201 S.W. 557 (Mo.App.1918).

■ The cross appeal by the LaSalas asserts that Greer's converse instruction on LaSalas' counterclaim for improper performance of the work was in error. LaSalas submitted this counterclaim on an instruction which required the jury to find, first, that Greer "constructed the house" and, second, that the work performed in constructing the house was improperly done. Greer's converse instruction conversed the first element of that instruction in substantially the same language as the fact issue posited to the jury. Under the unusual fact circumstances of this case and the confused relationship between the parties, the instruction cannot be held to be erroneous. LaSalas urge that the issue of the construction of the house by Greer was not in issue and that the converse was not proper because it conversed an issue not in dispute. The difficulty with this argument is that it is simply not based upon a proper appraisal of all of the evidence in the case. As indicated earlier, the relationship between the parties was a matter of considerable dispute. It was the LaSalas' position on Greer's claim on his account that he was not entitled to any payment for "supervision" and the jury by its verdict so found. The LaSalas' theory on the counterclaim, however, was that Greer was a general contractor and was therefore responsible for the defects in workmanship by other contractors involved in the job, apparently

**382**

on the theory they were subcontractors of Greer's and had not contracted directly with LaSalas. These two theories of LaSalas are contradictory and would rest upon entirely different factual findings by the jury. The jury quite apparently understood the issues in the case and reached a verdict on all of the issues consistent in its factual analysis. The jury found on Greer's claim on his account that he was not a general contractor and not entitled to a claim for supervision fees and overhead expenses. Consistent with that finding, they found against LaSalas on a theory that Greer should respond in damages for the failure of performance of other contractors involved in the work. The Greer converse does not follow the comment to MAI 33.01 for conversing alternative verdict directors, but that issue is not raised and will not be considered. Rule 70.03. The instructions presented the issues to the jury, and they made a proper and consistent determination of the issues on these conflicting claims. No prejudice to the LaSalas appears from the instruction they challenge, and the judgment of the lower court will be affirmed in all respects.

All concur.