**Frederick N. SPENCER, et al.,
Respondents,**

v.

**James CRAWFORD, Appellant.**

**No. WD 35197.**

Missouri Court of Appeals,
Western District.

Jan. 15, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
March 5, 1985.

■■■■■■■■■■■■■■

Kenneth O. Smith, Kansas City, for appellant.

Phillip Sanford Smith, Kansas City, for respondents.

Before TURNAGE, C.J., and MANFORD and LOWENSTEIN, JJ.

MANFORD, Judge.

This is a direct appeal from a jury award for damages for personal injury. The judgment is reversed and the cause remanded.

A sole point is presented, which in summary charges that the trial court erred in excluding evidence of respondent Frederick Spencer's physical condition with regard to intoxication and impotency as such evidence was relevant and admissible as to respondent's credibility and in support of appellant's pleaded defense of contributory negligence.

In summary, the facts describing the events involved in this incident are as follows.

Respondent Frederick Spencer (original plaintiff at trial) testified that on August 13, 1979 at about 5:45 a.m., he was walking on the sidewalk, westbound on 47th Street, in Kansas City, Missouri. His destination was the Music Box Tavern, located on 47th Street. He stated that as he proceeded, he stepped with his left foot onto the southwest corner of a "coal hole cover".[1] As he lifted his right foot to step off the cover, the cover gave way, causing him to fall through the hole into the basement area of the Music Box Tavern. He stated that he was impaled on the cover. He crawled to the upstairs area of the Music Box Tavern where an employee was present who in turn summoned assistance. Injuries to respondent were serious, including an intesti-

nal puncture which required surgery. The surgery initially called for a colostomy which, by later surgery, was closed by reattachment of the intestine. He also suffered lacerations. Respondent offered evidence of the permanency of his injuries, which included a claim of impotency.

Pre-trial discovery included respondent's deposition. In his deposition, he stated that he had consumed eight or nine vodka and 7-ups during the evening prior to his fall.

Prior to trial, respondent orally requested a motion in limine which was sustained and which prevented appellant from making any inquiry or introducing any evidence regarding respondent's drinking the night before his fall.

During trial, a witness for respondent, Owen Cawvey, was called. During the cross-examination of Cawvey, he was asked, "[D]id you see Fred Spencer the night before this accident?" This brought a prompt objection from respondent. After a bench conference, the trial court was made aware that the inquiry concerning respondent's condition bore upon his ability to observe his surrounding conditions. The court sustained the objection as being without foundation and that respondent's condition prior to his fall was not relevant or material. At this point, appellant was granted permission to make an offer of proof, but those proceedings were not recorded and are not before this court, except for a later recapitulation of the offer subsequently in the transcript.

As the trial progressed, appellant attempted to cross-examine respondent on his condition prior to the fall. This inquiry again was objected to as being irrelevant and immaterial, and the trial court sustained the objection. Again, the trial court was advised that the purpose of the inquiry was to test respondent's ability to observe

---

**1.** A coal hole was described upon the record as a loading chute device which opened onto the sidewalk. The coal hole originally had been designed for access to basement areas of buildings along 47th Street. It was used for various purposes, carrying materials to and from the basement areas. Presently, its main use was for trash removal. The cover, also called a plate, measured 29 x 48 inches with an approximate weight of 80 pounds.

and see the condition of the grate or plate. After inquiry, the court was also advised of appellant's intention to ask respondent as to whether he (respondent) had been drinking the night before and if he (respondent) was intoxicated the morning of his fall. The court was then advised by appellant that appellant had a witness who, if allowed to testify, would state that respondent's breath and blood contained a strong "acetone" odor indicating the consumption of alcohol by respondent. This tendered witness was the paramedic who cared for respondent at the scene. This paramedic stated that in his judgment respondent was inebriated. He also stated that diabetes and liver ailments would also produce an "acetone" odor, but in his judgment, it was alcohol which produced the odor, both in the blood and breath of respondent. Later, testimony by respondent included his denial of any liver or diabetes condition. The offer of proof of the testimony of the paramedic was denied.

In addition, appellant made an offer of proof that if allowed to testify, an area physician would testify as to how respondent's senses would have been impaired by the amount of alcohol consumed by respondent as verified in respondent's deposition.

Further medical records concerning respondent's admission and treatment were introduced. Contained in those records was information related to respondent's consumption of alcohol prior to his fall. The trial court denied appellant permission to read that portion of the medical records (although the records were in evidence) concerning the alcohol consumption.

As part of his claim, respondent testified that he suffered from impotency. His estranged wife also testified to his impotency. There was no medical evidence introduced by respondent that his injuries produced impotency. Appellant offered to produce medical testimony by an area physician who, if allowed to testify, would have said that respondent's daily average consumption of from 6–18 cans of beer, plus the eight or nine vodka and 7-ups, would have a substantial effect upon male potency. The trial court denied this offer of proof.

The jury returned a verdict of $125,-000.00 for respondent and $50,000.00 for his estranged wife. This appeal followed.

Before this court, appellant asserts that he was denied a fair trial because of the repeated refusal of the trial court to allow appellant to ask about and/or introduce evidence regarding respondent's condition prior to his fall and his continual use of alcohol.

It is appellant's position that the denial of this effort to secure such evidence prevented appellant from rebutting respondent's case in chief, because such evidence was relevant to respondent's "sensory deficits." Appellant further asserts that the trial court's action denied appellant the right to support its defense of contributory negligence.

This case was submitted to the jury on a negligence per se theory upon the violation of a city ordinance requiring landlords and tenants to maintain devices such as the coal hole in a safe condition. As the record discloses, the only evidence linking the events giving rise to respondent's injuries and the violation of the ordinance was provided by respondent. There were no other witnesses to the fall of respondent.

Respondent, both at trial and before this court, argues that the only purpose for the inquiry and admission of evidence related to the consumption of alcohol by respondent was to display before the jury the assertion of respondent's "bad character". The record fails to support respondent's contention, as appellant repeatedly outlined for the trial court the intended purpose of such evidence. Respondent could have been protected by the use of a limiting instruction. *Ted W. Greer Construction Co., Inc. v. LaSala*, 642 S.W.2d 379 (Mo. App.1982).

■ Evidence of the intoxication of a witness is relevant and material to his ability to see, hear, perceive, and observe. *State v. Caston*, 509 S.W.2d 39, 41 (Mo. 1974); *Sanders v. Armour & Co. of Dela-*

*ware*, 292 S.W. 443 (Mo.App.1927). Such evidence relates to the credibility of a witness regarding what transpired on the occasion in question. Such evidence is admissible by either cross-examination or by separate and independent testimony. *Caston* at 41.

▪ The trial court erred in denying appellant the opportunity to cross-examine respondent relative to his condition and more specifically, regarding any intoxication prior to or at the time of his fall, as that evidence, if any, was relevant as to respondent's sensory ability to observe his surroundings, including the coal hole and plate.

▪ The trial court also erred in denying appellant the opportunity to present the paramedic witness to testify as to his observations. Once again, that testimony was relevant to respondent's condition, which in turn was related to his sensory abilities. His testimony upon the offer of proof supplied sufficient facts to support his opinion. See *Limbaugh v. Forum Lunch Co.*, 258 S.W. 451 (Mo.App.1924); *State v. Edmonds*, 468 S.W.2d 685, 688 (Mo.App.1971). The same holds true for the error committed by the trial court in denying appellant the opportunity to introduce testimony of the area physician regarding the influence of eight or nine vodka and 7-ups or sensory ability.

All of this evidence was material and relevant, both in regard to fairness of appellant defending against respondent's initial claim and support of appellant's pleaded affirmative defense of contributory negligence. In essence, from a reading of the entire transcript, the trial court, by its error, prevented appellant from offering any evidence upon one of its alleged defenses.

▪ The trial court also erred in denying appellant the opportunity to introduce medical evidence that daily use of 6–18 cans of beer, plus consumption of eight or nine vodka and 7-ups just prior to the respondent's fall could cause male impotence. The entire evidence upon this matter came from respondent and his estranged wife who stated that pain and discomfort prevent normal sexual relations between them. Evidence of alcoholism is admissible in claims involving permanency of injury. *Ford v. Kansas City*, 181 Mo. 137, 79 S.W. 923, 925 (1904).

The evidence upon respondent's condition was admissible and it was for the jury as the trier of fact to weigh that evidence and to either accept or reject it. It was prejudicial error for the court to have excluded it.

When this record is read and considered in its entirety, it is obvious that as a result of the trial court's rulings appellant herein was denied a fair trial and the judgment must be set aside.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

All concur.